153 App. Div. 17, 138 N. Y. Supp. 13); but in the case at bar the contractor, by executing the bond, in effect became a party to the lease, and the bond it executed was intended to protect the landlords against any claim arising out of the performance of the work. The lien shows that much of the work had been performed by plaintiff before the formal lease was executed, which indicates that it was contemplated that the improvements were to be made by plaintiff. Here the contractor not only knew of the limitation as to the cost of the improvements, which was made definite in amount by the bond and would limit the liability, if any, of the owner (McLean v. Sanford, 26 App. Div. 603–605, 51 N. Y. Supp. 678; Steeves v. Sinclair, 56 App. Div. 448–453, 67 N. Y. Supp. 776; Hankinson v. Van Tine, 152 N. Y. 20, 46 N. E. 292); but the contractor was a party to the limitation agreement. The plaintiff, therefore, was estopped by its bond from filing or asserting any lien as against the appellants.

It follows that the judgment should be reversed, with costs, and any findings inconsistent with these views should be reversed, and findings in accordance therewith made, and the complaint dismissed, with costs. All concur.

---

KIDDER v. ADRIAN PETROLEUM CO. et al.

(Supreme Court, Appellate Division, First Department. December 24, 1915.)

1. MINES AND MINERALS ⬥⟿74—ASSIGNMENT OF LEASE—REASSIGNMENT.

An assignment of leasehold rights in oil lands, containing a covenant to pay royalties to the assignor, running with the land and attaching to the production of the first well upon the property, whoever was the owner thereof, contemplated a reassignment.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. ⬥⟿74.]

2. MINES AND MINERALS ⬥⟿74—ASSIGNMENT OF LEASE—SECURING PAYMENT OF NOTE—RIGHT TO RESCISSION.

Where, in an assignment to defendant of leasehold rights in oil lands, a provision for rescission if notes for the purchase price were not paid at maturity, and a covenant against reassignment before their payment, were intended to further secure the payment of the notes, and the plaintiff, after their payment in full, had no ground for rescinding his assignment.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. ⬥⟿74.]

3. MINES AND MINERALS ⬥⟿74—ASSIGNMENT OF LEASE—RESCISSION—SUFFICIENCY OF COMPLAINT.

Allegations of a complaint in an action to rescind an assignment of leasehold rights in oil lands on the ground of the repudiation of an agreement to pay a royalty on the part of plaintiff on the part of the subsequent assignees, alleging that they had "definitely taken the position" that by reason of such reassignment plaintiff had been done out of his right to royalties was insufficient, as when the time for payment arrived such assignees might change their minds.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. ⬥⟿74.]

4. MINES AND MINERALS ⬥⟿79—ASSIGNMENT OF LEASE—COVENANT TO PAY ROYALTIES—ADEQUATE REMEDY AT LAW.

Where a covenant to pay royalties to plaintiff, the assignor of certain leasehold interests in oil lands, out of the first producing well, was in-

tended to run with the land, and subsequent assignees acquired their rights with knowledge of that fact, the assignor had an action at law against such assignees for the royalty due, and, if not paid, an action for damages for breach of the covenant, which would be adequate, so that he could not resort to the rescission of his assignment.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 209; Dec. Dig. ☞79.]

Appeal from Special Term, New York County.

Action by James H. Kidder against the Adrian Petroleum Company and others. Judgment for defendants on demurrer, and plaintiff appeals. Affirmed, with leave to plaintiff to amend.

The opinion of Page, J., on sustaining the demurrer at Special Term, was as follows:

Upon analysis of the complaint it appears that the action is founded principally upon the alleged right of the plaintiff to rescind his assignment to the defendant Adrian Company of certain leasehold rights in Mexican oil lands and to have back the lease, pursuant to a provision of the contract giving him that right, on the ground that notes for the purchase price, $16,382.-45, were not paid at maturity. Other allegations of the complaint are directed towards showing that the plaintiff's apparent election not to rescind and his acceptance of the amount of the notes after they were overdue was induced by fraudulent concealment on the part of the defendants of material breaches of the contract by them. It is therefore claimed that the prior election not to rescind was not binding, and the plaintiff, now for the first time cognizant of the facts, has the right to go back and rescind the assignment.

[1, 2] The breaches of contract alleged, of which plaintiff was previously ignorant, were a transferring of part of the oil fields to others and the conducting of the operations toward drilling the well by such transferees, contrary to covenants of the agreement. All the plaintiff was entitled to under his contract, however, was the purchase money ($16,382.45) and 2½ per cent. of the output of the first successful well. It is alleged in the first part of the complaint that it was the intent of the parties to the agreement that this covenant to pay royalties of 2½ per cent. to the plaintiff should run with the land and "should attach to the production of the first well upon that 1,350 acres producing oil in commercial quantity, no matter who was the owner of the said well, so long as the title was held pursuant to the Sandoval lease." Thus it is apparent that the parties contemplated a possible assignment by the Adrian Company of the rights in the property, and the alleged covenant against assigning before the payment of the notes was merely for the purpose of further securing their payment. The right to rescind the transaction in the event of nonpayment of the notes was also designed to secure the payment of the notes only. It appearing that the notes have all been paid in full, with interest, no ground is shown in the complaint for decreeing a forfeiture of the lease.

[3, 4] It only remains to consider the allegations of the complaint which purport to show a repudiation of the agreement to pay a royalty of 2½ per cent. to the plaintiff by certain of the defendants who are assignees of the Adrian Company. As to these I am of the opinion that, though it is alleged that these defendants "have definitely taken the position that by reason of these transfers the plaintiff has been completely done out of the royalty to which he was entitled under his agreement aforementioned, and all of the defendants * * * now claim to have possessed themselves of the plaintiff's very valuable leasehold properties * * * without further obligations to pay for the same, * * *" no facts are set forth in support of these statements which would show a definite repudiation of the contract. It might well be that they have "definitely taken the position" as aforesaid, and yet when the time arrives that they are under obligation to pay royalties they may change their minds. If the covenant to pay royalties to the plaintiff was intended to run with the land, as alleged, and all the parties to the action acquired their rights through the Adrian Company with knowledge of that

fact, the plaintiff has a complete action at law against any of the said assignees who may first obtain commercial oil for the amount of his royalty upon the oil produced, and his remedy by damages in such an action for breach of the covenant to pay royalties is adequate.

The demurrers to the complaint are sustained with costs, with leave to the plaintiff to serve an amended complaint within 20 days upon payment of costs to date, in default of which the complaint will be dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

H. Taylor, of New York City, for appellant.

C. K. Carpenter, of New York City, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of Page, J., with leave to plaintiff to amend on payment of costs. Order filed.

---

(92 Misc. Rep. 567)

## BAXTER v. BAXTER.

(Supreme Court, Equity Term, Erie County. December, 1915.)

1. WITNESSES &#9750;205—PRIVILEGED COMMUNICATIONS—COMMUNICATIONS TO ATTORNEY—STATUTE.

In an action by a son against his mother to restrain her from enjoying a life estate which she claimed to have been granted by her deceased husband, testimony of the attorney for the husband that the latter had prepared a certain mutilated instrument, in evidence as a deed of a life estate to the mother, was admissible, despite Code Civ. Proc. § 835, providing that an attorney shall not be allowed to disclose a communication made by his client to him in the course of his professional employment, where the instrument, after it left the attorney's hands, was delivered by decedent to the mother, and thereby relieved from the privacy of a confidential communication.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 754, 763; Dec. Dig. &#9750;205.]

2. DEEDS &#9750;208—DELIVERY—SUFFICIENCY OF EVIDENCE.

In an action by a son to restrain his mother from enjoying a life estate, which she alleged her deceased husband had conveyed to her by a deed in evidence, acknowledged by him and mutilated by removal of the grantee's name, evidence *held* sufficient to show delivery of such deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632; Dec. Dig. &#9750;208.]

Action for an injunction by William A. Baxter against Elizabeth Baxter. Judgment for defendant.

Henry W. Willis, of Buffalo, for plaintiff.
Sullivan, Bagley & Wechter, of Buffalo, for defendant.

BROWN, J. On December 7, 1887, William Baxter and the defendant, Elizabeth Baxter, were married; the defendant then being 17 years of age. By deed recorded May 1, 1888, William Baxter took title to the premises described in the complaint. William Baxter and his wife, Elizabeth, thereafter resided thereon until the death of William Baxter, in 1914. The plaintiff, a son of William and Eliza-